# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**ANTHONY HEUSER,**

    **Plaintiff,**

**vs.**                                                    **No. CIV 99-884 JP/LFG**

**ED WOOD, Individually and in his official
capacity, RAY LOVELL, Individually and
in his official capacity, and CITY OF
BLOOMFIELD,**

    **Defendants**.

## MEMORANDUM OPINION AND ORDER

On January 28, 2000 Defendants filed a Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 39).

On March 29, 2000 the Magistrate Judge filed an order to which Plaintiff on April 6, 2000 filed objections (Doc. No. 59). On April 20, 2000 Defendants filed a response to Plaintiff's objections. On May 1, 2000 Plaintiff filed a reply. On May 12, 2000 Defendants filed a Motion to Strike Plaintiff's Memorandum in Reply to Defendants' Response to Objections to Magistrate Judges' March 30, 2000[1] Order filed May 1, 2000 (Doc. No. 66).

Defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion to strike Plaintiff's reply to Defendants' response to Plaintiff's objections to the

---

[1] The Magistrate Judge's order to which Plaintiff objects was actually filed on March 29, 2000.

Magistrate's order will be denied. Plaintiff's objections to the Magistrate Judge's order will be granted.

## I. Background

The allegations in the Amended Complaint are as follows: On or about March 22, 1999 Plaintiff went to the Bloomfield Municipal Courthouse to file a motion to dismiss a case against his grandson. When Plaintiff gave the motion to the clerk, he requested that the clerk take the telephone number of the defendant in that case so that the clerk could call that person when his case was dismissed. The clerk responded to Plaintiff, "[D]o not count on dismissal." *(Am. Compl.*, ¶ 7.) Plaintiff replied to the clerk that if the municipal court did not dismiss the case, an appellate court would. Plaintiff then left the clerk's office.

Plaintiff alleges he was within twenty feet of the courthouse door when Plaintiff, for the first time, noticed Defendant Wood, a Municipal Judge for Defendant City of Blooomfield. Defendant Wood was pursuing Plaintiff, shouting, 'Sir, you don't come in and talk to my clerk like that. [Y]ou was awful nasty to her. I don't know who you are. Let's just go down to the police station.'" (*Id.* ¶ 9.)

Plaintiff claims that Defendant Wood caught up to Plaintiff, seized Plaintiff by force, and pulled Plaintiff down the hallway to the police station door. Plaintiff further alleges that Defendant Wood then told Defendant Lovell, a Sergeant on the Bloomfield police force, to place Plaintiff under arrest. Defendant Wood alleged said, "I'm putting a complaint of he's coming into court chewing on my clerk and trying to tell us what - how to run our business." (*Id.* ¶ 11.) Defendant Lovell then escorted Plaintiff into a room in the police station, and told Plaintiff to sit and wait. Later, an officer identified as "Lt. Davis," not a defendant in this case, asked Plaintiff

what happened and heard his explanation. (*Id.* ¶ 12.) Lt. Davis then took Plaintiff's driver's license, left the room but returned later, handed back the license, and told Plaintiff he was free to go. Lt. Davis also told Plaintiff that Plaintiff would receive a summons. No criminal complaint was filed and no summons received.

Plaintiff also alleges that on March 23, 1999 Defendant Wood became so angry because Plaintiff's daughter brought a tape recorder to a hearing in Plaintiff's grandson's case that Judge Wood had her arrested and sentenced her to two days in jail and fined her $450. The next day Plaintiff's daughter spoke to City of Bloomfield council members. None took responsibility for Defendant Wood's appointment and none would look into her sentence. Instead, Defendant City passed an ordinance increasing the fine for contempt from $50 to $450. Plaintiff claims Defendant City therefore ratified Defendant Wood's unconstitutional behavior.

On August 8, 1999 Plaintiff pro se filed this lawsuit. Plaintiff's daughter is not a party. On October 13, 1999 the Magistrate Judge stayed discovery. On October 25, 1999 Plaintiff pro se filed objections to the Magistrate Judge's order on the ground that the stay prejudiced Plaintiff's ability to respond to a motion under Fed. R. Civ. P. 56. On November 18, 1999, I found Plaintiff's objection to the stay of discovery to be without merit because Defendants had filed a motion under Rule 12(b)(6) and not under Rule 56. There was no need for discovery as to the Rule 12(b)(6) motion. On December 23, 1999 I ordered that Defendants' motion under Rule 12(b)(6) was moot because the Amended Complaint which Plaintiff had served but not filed superseded the original complaint at which the motion to dismiss was directed. In that order I also lifted the stay of discovery and reinstated the Provisional Discovery Plan discovery deadline of March 2, 2000.

3

On January 10, 2000 Plaintiff pro se (but with obvious legal assistance) filed the Amended Complaint. The Amended Complaint brings an action under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. It also contains two tort claims and one state constitutional claim against Defendant Lovell.

On January 19, 2000 Defendant Wood filed a certificate indicating that he served Plaintiff with interrogatories and a request for production of documents to which Plaintiff apparently responded. On or about February 7, 2000 Plaintiff served interrogatories on Defendants. On or about February 17, 2000 Defendants gave Plaintiff notice of their intent to take Plaintiff's deposition. On February 24, 2000 Plaintiff filed a motion to extend the discovery deadline until May 1, 2000, citing a bout with pneumonia requiring hospitalization during January. Specifically, Plaintiff pro se requested the opportunity to review Defendants' answers to interrogatories which he had not yet received and then schedule depositions of Defendants, if need be.

On March 15, 2000 the Magistrate Judge granted Plaintiff's motion for an extension of time and set April 3, 2000 as the deadline for completing discovery. Plaintiff claims in an affidavit that he did not receive the Magistrate's March 15, 2000 order until March 20, 2000. On or about March 21, 2000 Plaintiff served on Defendants a notice of intent to depose on March 29, 2000 two party and eight non-party deponents. On March 24, 2000 Defendants moved for a protective order on the ground that Plaintiff's notice violated D.N.M.LR-Civ. 30.1 which requires at least fourteen days notice. On March 29, 2000 the Magistrate Judge granted the protective order, citing Plaintiff's failure to consult with Defendants prior to noticing depositions and Plaintiff's failure to give fourteen days' notice.

On April 6, 2000 Plaintiff for the first time in this case had counsel who has entered an appearance.

## II. Standard of Review

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a district court must liberally construe the pleadings and must also accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. See Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984). The issue before a court considering a motion to dismiss is not "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint may be dismissed only if it appears to a certainty that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. Discussion

### A. Defendant Wood

Defendant Wood claims he is entitled to absolute judicial immunity from suit because he acted in his judicial capacity when he undertook the acts at issue. Specifically, Defendant Wood claims he was fulfilling his judicial role as a conservator of the peace and a keeper of order and decorum when he quelled a disturbance between Plaintiff and the court clerk. "Regardless of where the encounter" took place, Defendant Wood claims he is immune. (Memo. in Supp. at 5.)

A judge is absolutely immune from a section 1983 suit for damages for (a) judicial acts (b) for which the judge has at least a semblance of subject matter jurisdiction. See Lerwill v. Joslin, 712 F.2d 435, 438 (10th Cir. 1983) (citing Stump v. Sparkman, 435 U.S. 349 (1978)).

> Immunity . . . "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." . . . It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision- making but to intimidation.

Gregory v. Thompson, 500 F.2d 59, 63 (9th Cir. 1974) (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)). "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362.

Contrary to Defendants' position, the facts of Gregory are rather similar to the allegations in this case and are therefore instructive. In Gregory, the sixty-five year old plaintiff sued the defendant, a Justice of the Peace, who claimed judicial immunity. See Gregory, 500 F.2d at 61. The plaintiff felt that the defendant had acted without jurisdiction when he sentenced an acquaintance of the plaintiff for a traffic violation. See id. The plaintiff went to the defendant's courtroom on a regular court day and said the he wanted to represent his friend. See id. The defendant responded that a non-lawyer could not do so. See id. The defendant then either politely asked or emphatically told the plaintiff to leave. See id. The plaintiff's response was, "O.K., you throw me out." Id. The defendant got up from his courtroom desk and did just that. See id. He forced the plaintiff out the door, threw him to the ground, jumped on him, and began to beat him. See id.

The Ninth Circuit found that the defendant was not entitled to judicial immunity. A

6

decision personally to evict someone by force from a courtroom is not a judicial act. See id. at 64. More importantly, the court found, the purpose of judicial immunity to promote "principled and fearless decision-making" would not suffer by finding no immunity. Id.

This case may not involve the apparently violent assault that was the subject of Gregory, a fact which favors Defendant Wood. First, however, the allegations of the Amended Complaint do indicate Defendant Wood's use of force on Plaintiff. Second, this case definitely did not involve the courtroom proceeding scrutinized in Gregory, with a judge on the bench. There was not even an informal out-of-court interaction between Plaintiff and Defendant Wood, until Defendant Wood followed Plaintiff to the door. Thus the facts in this case suggesting no judicial immunity are even stronger than those in Gregory.

Further, the arguments Defendant Wood makes are unpersuasive. Certainly as a judge he should be a conservator of peace. Cf. N.M. Const. art. VI, § 21 (stating that justices of the supreme court, district judges, and magistrates "shall be conservators of the peace"). There is also no doubt that as a judge he is authorized to maintain order. See NMSA 1978, § 34-1-2 (1953). But the disturbance, if there was one which he purported to quell, was long over by the time Defendant Wood attempted to quell it. If anyone broke the peace when Plaintiff and Defendant Wood interacted, Defendant Wood did. Moreover, it is doubtful that the power allotted to Defendant Wood because he is a judge extends, under the alleged facts, without physical limits as Defendant Wood claims.

Finally, the application of Stump also points to finding Defendant Wood's act was not judicial. The "act" at issue was not the sort of judicial decision from which appeal may be taken and for which the judicial immunity doctrine was designed. See Stump 435 U.S. at 362; Gregory,

7

500 F.2d at 64. In pursuing Plaintiff down the corridors from the office of a court administrator, Defendant Wood assumed a function not normally performed by a judge. See Stump at 362. Instead he acted more in the capacity of an ordinary department head or as an employer when he purported to stand up for the employee in his charge and objected to Plaintiff telling her how to conduct her business. See id. Accordingly, Defendant Wood is not entitled to judicial immunity.

**B.     Defendant Lovell**

Defendants first argue that Defendant Lovell enjoys quasi-judicial immunity derived from Defendant Wood. Defendant further argues that such quasi-judicial immunity extends to the state law claims made against Defendant Lovell for false arrest, false imprisonment, and the right under the state constitution to be free from unreasonable seizures. Specifically, Defendants acknowledge the waiver in NMSA 1978 § 41-4-12 (1976) for state law claims of the type in this case asserted against a law enforcement officer acting within the scope of his duties. But, Defendants argue, that waiver does not apply to Defendant Lovell because he was acting upon the order of Defendant Judge Wood. Therefore, Defendants' position appears to be that the doctrine of quasi-judicial immunity trumps any waiver of liability contained in NMSA 41-4-12 and restores immunity from suit.

Plaintiff argues that Defendant Lovell cannot derive immunity from the section 1983 claims against him by arguing that he was merely following or implementing Defendant Wood's court order because Defendant Wood did not issue any court order. As to the state law claims against Defendant Lovell, Plaintiff simply points to NMSA 41-4-12 and asserts the state has waived Defendant Lovell's immunity.

Plaintiff also cites to Turney v. O'Toole, 898 F.2d 1470 (10th Cir. 1990). In Turney, the

Tenth Circuit found that officials executing a facially valid judicial order enjoyed quasi-judicial immunity. Id. at 1474. Although the judge was not a named defendant, the court commented that "the order must be one for which the issuing judge is immune from liability." Id. From Turney would seem to flow the conclusion that Defendant Lovell is not entitled to quasi-judicial immunity because Defendant Wood was not immune when he told Defendant Lovell to arrest the Plaintiff.

However, Defendants then analyze Valdez v. City and County of Denver, 878 F.2d 1285 (10th Cir. 1989). In that case a judge issued to various executing officials verbal and written orders to arrest Plaintiff because of Plaintiff's in-court conduct. See Valdez, 878 F.2d at 1286. Again, the judge was not a named defendant but was nonetheless found to be absolutely immune, which immunity inured to the executing officials. See id. at 1289. The court also discussed the policy driving its holding:

> The extent of government officials' immunity depends upon the likely effect their exposure to liability will have on the operation of effective government in a particular context, balanced against the potential for a deprivation of individual rights in that context . . . Tension between trial judges and those officials responsible for enforcing their orders inevitably would result were there not absolute immunity for both. Officials employed to implement facially valid court orders could choose: They may disregard the judge's orders and face discharge, or worse yet criminal contempt, or they may fulfill their duty and risk being haled into court. Judge Learned Hand recognized years ago that the fear of suit will "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). Officials such as the defendants must not be required to act as pseudo-appellate courts scrutinizing the orders of judges. The public interest demands strict adherence to judicial decrees. The Supreme Court has stated that "[p]ublic officials ... who fail to ... implement decisions when they are made do not fully and faithfully perform the duties of their offices." Scheuer v. Rhodes, 416 U.S. 232, 241-42, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974). Absolute immunity will ensure the public's trust and confidence in courts' ability to completely, effectively and finally adjudicate the controversies before them.

9

Id. at 1287 and 1289 (certain citations omitted). Application of this policy would, on the other hand, seem to indicate that Defendant Lovell should be immune from suit, despite Defendant Judge Wood's lack of immunity.

Specifically, the facts as outlined in the amended complaint indicate that Defendant Lovell had no way of knowing that Defendant Wood was not acting in his judicial role when he presented Plaintiff for arrest. The complaint does not indicate that Defendant Lovell witnessed the exchange between Plaintiff and the clerk at the clerk's office or between Plaintiff and Defendant Wood near the courthouse exit. Instead, when Defendant Lovell first entered the picture, Defendant Wood issued to him a verbal arrest command which was not, it seems, facially invalid.[2]

Stated another way, certain facts not alleged in the complaint could have rendered Defendant Wood's presentation of Plaintiff for arrest a perfectly legitimate judicial act under the circumstances. Were that the case, Defendant Lovell would without question be immune. It does not seem to be in the public interest then to find that Defendant Lovell should not be immune simply because of facts before Defendant Lovell's involvement and outside his knowledge.

Certainly Defendant Lovell's role is secondary to that of Defendant Wood. Unfortunately, the parties' briefing also gives the issues presented by Defendant Lovell secondary treatment. Accordingly, the parties are directed to file cross-briefs by not later than June 15, 2000 on the following issues concerning Defendant Lovell: The first main issue is whether Defendant Lovell

---

[2] The conduct described at paragraph 11 of the Amended Complaint is a judicial order insofar as it was an order to an official from a judge. Plaintiff's arguments to the contrary seem to mean rather that the order was facially invalid. Plaintiff is therefore instructed to further address whether the conduct described at paragraph 11 of the Amended Complaint describes a facially valid judicial order to a judicial officer, as part of the supplemental briefing described infra.

has quasi-judicial immunity, or perhaps qualified immunity, given that Defendant Wood is not immune. In particular, the parties are instructed to locate cases, unlike <u>Turney</u> or <u>Valdez</u>, discussing judicial officials' liability in carrying out a judge's order where the judge involved is not immune. The parties are further instructed to brief whether Defendant Lovell is instead entitled to good-faith immunity. <u>See, e.g.</u>, <u>Turney</u>, 898 F.2d at 1474; <u>Gregory</u>, 500 F.2d at 65. Also, Plaintiff must direct his attention to the above-cited Tenth Circuit policy stated in <u>Valdez</u> and explain why it would not be undermined by finding Defendant Lovell is not immune. Defendants must address why this court should disregard the clear directive of <u>Turney</u> that for the officials executing an order to have absolute immunity themselves, "the order <u>must</u> be one for which the issuing judge is immune from liability." <u>Turney</u>, 898 F.2d at 1474 (emphasis added).

The other main issue for additional briefing concerns the effect upon the three state law claims of a possible finding that Defendant Lovell is entitled to quasi-judicial immunity, or perhaps qualified immunity, from suit under section 1983. Defendants' apparent position can be stated in two parts, neither of which seem well-supported. First, they claim that quasi-judicial immunity for individuals such as Defendant Lovell is a part of New Mexico common law. Defendants cite a 1912 chestnut examining the impact of New Mexico's statehood on the status of district attorneys and a case discussing an issue unrelated to this case following the one-sentence premise that prosecutors are absolutely immune from section 1983 cases. (<u>See</u> Defs' Memo. in Supp. at 6.) Second, Defendants imply that Defendant Lovell's purported quasi-judicial immunity supercedes the conceded waiver of immunity found in NMSA 41-4-12 for law enforcement officials acting within the scope of their duties. They cite no cases here. Defendants are accordingly instructed to locate appropriate, persuasive legal authority. Similarly, Plaintiff is instructed to explain why a

11

finding that Defendant Lovell is immune from suit under section 1983 would not extend to immunity from suit for causes of action described in NMSA 41-4-12.

Both parties are reminded that the court is presented with a motion to dismiss. Thus, argument and analysis based on anything other than the allegations of the complaint will not be useful or proper.

### C. Defendant City of Bloomfield

Defendants move to dismiss the claims against Defendant City on the ground that the complaint alleges nothing more than the respondeat superior theory which the Court in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165 (1993) reaffirmed does not support a section 1983 claim against a municipality. Defendants concede that the Amended Complaint would state a claim for municipal liability if only it alleged a violation arising from custom or policy.

Plaintiff claims that the allegations in the Amended Complaint are sufficient to withstand a motion to dismiss because the complaint alleges that Defendant City acted with deliberate indifference when it appointed Defendant Wood and that Defendant City has ratified other unconstitutional actions of Defendant Wood. Plaintiff claims that these allegations support a claim that Defendant City has a custom, policy, or practice of (1) deliberate indifference to the rights of citizens through the appointment, approval, and retention of a judge such as Defendant Wood and (2) a custom, policy, or practice of ratifying the unlawful actions of its municipal judge. Plaintiff further argues that the Amended Complaint gives rise to the reasonable inference

that Defendant City has failed to properly train Defendant Wood.[3] Plaintiff asks for leave to amend if his allegations regarding judicial training are lacking.

Plaintiff appears to assert three different bases for municipal liability. However, Plaintiff has failed to assert in his Amended Complaint that any of these amounts to a municipal custom or policy. Monell v. Department of Social Servs., 436 U.S. 658, 690-91 (1978) is clear in its holding that municipalities are liable only for constitutional violations resulting from their customs or official policies. While Leatherman, 507 U.S. at 168, indicates that a plaintiff is not subject to a heightened pleading standard when claiming municipal liability under section 1983, Plaintiff has not even made a short and plain statement that Defendant City has a custom or policy of actions which caused the claimed constitutional violations. Accordingly, Defendants' motion to dismiss the claims against the City of Bloomfield will be granted. Plaintiff, however, will be granted leave to amend for the sole purpose of attempting to state a valid claim against the City of Bloomfield. If Plaintiff believes that he can properly state a claim, consistent with Federal Rule of Civil Procedure 11, that the City of Bloomfield violated Plaintiff's constitutional rights as protected by section 1983, Plaintiff may do so by filing a second amended complaint not later than June 15, 2000.

### D. Discovery

Before addressing Plaintiff's objections to the Magistrate Judge's March 29, 2000 grant of a protective order to Defendants, I must first consider a motion that typifies the acrimonious, and almost petty, nature of this case: Defendants' motion to strike the reply brief Plaintiff filed

---

[3] The parties also offer arguments concerning the effect of Defendant Wood's immunity upon the municipal liability claim. Because I have already found that Judge Wood is not immune, I need not address those arguments.

following Defendants' response to Plaintiff's objections to the Magistrate's March 29, 2000 protective order. Defendants argue that Rule 72 does not contemplate the filing of a reply, that the reply should thus be stricken, and that Plaintiff should be assessed Defendants' fees and costs for preparation and filing of their motion to strike. Plaintiff responds that the "normal course for briefing" allows for a reply and that Rule 72(a) does not even provide expressly for a response. (Memo. in Resp. at 1.) Plaintiff further asks that if I find that Plaintiff should have requested leave to file his reply, that I grant that leave now on the ground that Plaintiff needed to reply to misrepresentations and mischaracterizations in Defendants' response. Apart from one footnoted citation by Plaintiff, neither party cites any case, statute, or language from a rule to help me make a ruling.

Rule 72(a) is silent about whether a reply to a response to an objection to a Magistrate's order is permitted. But so are the whole of the federal rules silent as to reply briefs in general. The local rules discuss reply briefs, but not in the context of objections to a Magistrate Judge's order. See D.N.M.LR-Civ. 7.6 ("Timing of and Restrictions on Responses and Replies"). There is no local rule 72. As Plaintiff indicates, the comments to Federal Rule 72(a) state that "It is also contemplated that a party who is successful before the magistrate will be afforded an opportunity to respond to objections raised to the magistrate's ruling."

Rule 72(b), concerning objections to Magistrate recommendations for nondispositive motions and prisoner petitions, provides a ten day period for objections, like Rule 72(a). There is also a provision for response, unlike Rule 72(a), within the text of the rule. The court in Alexander v. Evans, (NO. 88 CIV. 5309 (MJL), 1993 WL 427409, at *4 (S.D.N.Y., Oct 15, 1993), considered these aspects of Rule 72(b) when faced with a motion to file a reply by a party

14

filing objections to a Magistrate's order. The court noted (1) the absence in Rule 72(b) of a provision for replies and (2) the inherent discretion in a district court to hear further evidence. See id. (citing Pan Am. World Airways, Inc. v. International Bhd. of Teamsters, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). The court then denied the motion because it found that the Federal Rules do not provide for a reply and that a reply was unnecessary in the case. See id.

The reasoning in Alexander is sound and, by analogy, should apply with equal force to Rule 72(a). Accordingly, I find that Plaintiff should have first sought leave to file his reply. I also find, however, that his failure to do so first does not mean that the reply brief should now be stricken. First, the Federal Rules of Civil Procedure and the Local Civil Rules for the District of New Mexico do not clearly indicate that a reply is unwarranted. Plaintiff should not be penalized for the rules' lack of clarity. Second, Defendants make no argument whatsoever that they were prejudiced by the reply. Defendants claim only that the reply should be stricken because Plaintiff broke an unclear rule. In contrast, Plaintiff points out that he made no new arguments in his reply and that he filed it to address perceived misrepresentations in Defendants' response. Thus, Plaintiff has shown good cause to file his reply. Plaintiff will be deemed to have had leave of the court to file his reply to Defendants' response to Plaintiff's objections to the Magistrate Judge's March 29, 2000 order. Defendants' motion to strike that reply will therefore be denied.

I turn then to the merits of Plaintiff's objections to the Magistrate Judge's March 29, 2000 protective order striking Plaintiff's notice of depositions. A district judge "shall consider [objections to a Magistrate Judge's order] and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). An order is clearly erroneous when "although there is evidence to support it, the reviewing court

on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985).

I am firmly convinced that Plaintiff should be permitted to take the depositions of Defendant Wood and others reasonably calculated to have knowledge of the claim against Defendant Wood (and perhaps the City if Plaintiff chooses to amend.)[4] First, the Magistrate Judge's extension was essentially no extension at all, for purposes of taking depositions, when Plaintiff received it fourteen days before the close of the extended discovery period. Second, although local rule purports to require fourteen days' notice before scheduled depositions, the local rules must be interpreted consistently with the Federal Rules of Civil Procedure. See D.N.M.LR-Civ. 1.4. The Federal Rules require simply that a party give "reasonable" notice of a deposition. Fed. R. Civ. P. 30(b)(1). Plaintiff acted reasonably under the circumstances in attempting to comply with the Magistrate's tight deadline, in spite of giving less than fourteen days' notice. See, e.g., Ranger Transp. Inc. v. Wal-Mart Stores, Inc., 903 F.2d 1185, 1188 n. 6 (8th Cir. 1990); Radio Corp. of America v. Rauland Corp., 21 F.R.D. 113, 114-15 (N.D. Ill. 1957). Third, Defendants claimed no harm by the shorter-than-normal notice. Fourth, the Magistrate failed to fully consider Plaintiff's documented illness and incapacity which slowed, if not halted, Plaintiff pro se's ability to prosecute his case. Fifth, the Magistrate failed to fully consider Plaintiff's pro se status at the time. While Plaintiff has had obvious legal assistance prior to his official representation, for various legitimate reasons no lawyer entered an appearance until after the Magistrate's protective order. Pro se litigants are entitled to a measure of leniency. See

---

[4] Plaintiff may later be entitled to discovery concerning the liability of Defendant Lovell, depending upon the decision to be issued following the parties' cross-briefing described in section III.B.

16

Haines v. Kerner, 404 U.S. 519, 520 (1972). The Magistrate's protective order is contrary to this principle. The Magistrate's order was also contrary to the principle that a pro se plaintiff attempting to prosecute his case should be accorded discovery to pursue the merits of his case. Cf. Colon v. Coughlin, 58 F.3d 865 (2d Cir. 1995) (remanding for district court to consider allowing additional discovery interval where discovery period for diligent plaintiff stayed for less than two months). Plaintiff sought an extension until May 1, 2000 which, if granted, would have restored the discovery period, stayed for two months, to its approximate original length. Finally, the Magistrate clearly erred when he faulted Plaintiff for violating local rule 30.1 when the Magistrate concluded that Plaintiff failed to confer "in good faith regarding scheduling of depositions" before giving notice. D.N.M.LR-Civ. 30.1. Even though the burden is first on the party noticing the deposition, conference in good faith is a two-way street. The Magistrate erred in failing to recognize that Defendants' proper reaction to Plaintiff pro se's deposition notice would have been to contact Plaintiff pro se in an effort to establish a mutually agreeable deposition schedule. Like it or not, Defendants are held to a higher standard than Plaintiff pro se and are not excused from failing to confer even when Plaintiff so failed first. Defendants' motion for a protective order was premature. Although evidence exists in support of the Magistrate's order, I am definitely and firmly convinced that it was erroneously granted.

Accordingly, Plaintiff will be permitted the following limited discovery: Plaintiff will be permitted to depose Defendant Wood and any other individuals reasonably calculated to have knowledge of the claims against Defendant Wood. If Plaintiff chooses to amend his complaint to attempt to properly state a claim for municipal liability, Plaintiff may also depose those individuals reasonably calculated to have knowledge of the claims against the City of Bloomfield. Plaintiff

17

may not depose any individual not identified in Plaintiff's notice given on or about March 21, 2000 which was the subject of the Magistrate's protective order.  Plaintiff may not at this time depose any other individual for the purpose of gathering evidence solely against Defendant Lovell.  All depositions must be arranged, scheduled, and conducted within the letter of the Federal and Local Rules of Civil Procedure.  Plaintiff must conclude the depositions described here by not later than August 1, 2000.

IT IS THEREFORE ORDERED THAT:

(1) Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted is denied with respect to the claim that Defendant Wood is immune from suit;

(2) Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted is granted with respect to the City of Bloomfield but Plaintiff will be entitled to amend his complaint to attempt to state a claim against the City of Bloomfield by not later than June 15, 2000;

(3) ruling is reserved on Defendants' Motion to Dismiss Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted with respect to Defendant Lovell pending the parties' cross-briefs described in this Memorandum Opinion and Order which must be filed by not later than June 15, 2000;

(4) Defendants' Motion to Strike Plaintiff's Memorandum in Reply to Defendants' Response to Objections to Magistrate Judges' March 30, 2000 Order filed May 1, 2000 is denied; and

(5) Plaintiff's Objections to Magistrate Judges' March 30, 2000 Order Granting

Defendant's Motion for Protective Order and Striking Plaintiff's Notice of Depositions are sustained.

_____
**UNITED STATES DISTRICT JUDGE**